**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SPOTLIGHT COMPANY, Inc., Respondent.**

No. 71–1473.

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1972.

Decided May 22, 1972.

Alice Andrews, Atty., N.L.R.B., Washington, D. C., Peter G. Nash, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, John D. Burgoyne, Atty., N. L. R.B., for petitioner.

James W. Moore, Little Rock, Ark., Smith, Williams, Friday, Eldredge & Clark, Little Rock, Ark., for respondent Spotlight Company, Inc.

Before VAN OOSTERHOUT, BRIGHT, and STEPHENSON, Circuit Judges.

PER CURIAM.

This case represents our review of a third proceeding by the National Labor Relations Board against respondent-employer, Spotlight Company, Inc. (Company), on unfair labor practice charges. In the first case, the Board found the Company guilty of unfair labor practices against employees during initial attempts to organize the Company between April and mid-June 1969. Spotlight Co., 181 N.L.R.B. 641, 73 LRRM 1488 (1970), *enforced with one exception,* NLRB v. Spotlight Co., 440 F.2d 928 (8th Cir. 1971) (*Spotlight I*). In a subsequent proceeding, the Board found the Company guilty of additional unfair labor practices in discriminating against employees because of their union activities, these violations occurring in May and September 1969. Spotlight Co., 76 LRRM 1439 (1971), *also enforced with one exception,* NLRB v. Spotlight Co., 459 F.2d 880 (8th Cir., May 12, 1972) (*Spotlight II*).

The incidents here in question occurred during a two-month period preceding a representation election held March 26, 1970, in which employees voted 118 to 85 against the union. The Board found the Company guilty of unfair labor practices in violation of § 8(a) (1) of the Act by coercive interrogation of employees, threats of economic reprisals against the employees should the union succeed in organizing the Company, and promises of benefits should the employees reject the union. Spotlight Co., 76 LRRM 1443 (1971) (*Spotlight III*). The Board here seeks the enforcement of its order requiring the Company to cease and desist from the unfair labor practices found and from interfering in any other manner with its employees' statutory rights. The order further directs the Company to post the usual notices.

We deem it unnecessary to detail the incidents in question except to note that the charges stem from (1) conversations between ladies on the production line of the Company's plant in Ashdown, Arkansas, and "floor girls" who allegedly were supervisors, and (2) statements made by the plant president in a pre-election speech to employees delivered two days preceding the representation election and a similar speech given one day before the representation election.

We have examined the record as a whole and we find substantial evidence supporting the Board's findings and the propriety of its remedial order. The evidence supports the finding that the "floor girls" occupied a supervisory status and that some of their comments were coercive toward the employees on the production line. In the President's

speech, of March 24, 1970, he remarked that, if the union won the election, "[Y]ou won't be able to talk to us except through union favorites, and we won't be able to talk to you except through the union." In his speech the next day, he commented:

If we make a promise at a time like this prior to an election we are guilty of breaking the law. But, thank heavens—after tomorrow we'll have the right to talk to you freely. It's only natural for management to want to clean up all gripes as quickly as possible if not hampered by the union—it's good business for us to try to keep our employees happy. It has been our policy during this period of growth to pay what the business can afford and yet still stay in line with our competition. And when changes are due—changes will be made.

Although we doubt whether the President's first statement above, made on March 24, 1970, would justify a finding that the Company had committed an unfair labor practice, we believe his later statement, in the March 25 speech, can be construed as a promise of benefit if the union were rejected. *See* NLRB v. Dixisteel Buildings, Inc., 445 F.2d 1260, 1264 (8th Cir.1971). Although under ordinary circumstances, this statement would appear innocuous, in light of the Company's persistent anti-union attitude as reflected in *Spotlight I* and *Spotlight II,* we sustain the Board's finding on this issue.

Accordingly, on the basis of the whole record, the Board's order is entitled to enforcement. See Rule 14 of this court.

VAN OOSTERHOUT, Circuit Judge (concurring in part and dissenting in part).

I agree with the majority opinion to the extent that it determines that the "floor girls" were supervisors and that their interrogation of certain employees was coercive in violation of § 8(a) (1) of the Act and that such portion of the Board's order is entitled to be enforced.

I cannot agree that the speeches of the President made on March 24 and 25, the essential portions of which are set out in the majority opinion, may be fairly interpreted as going beyond the right of free speech guaranteed by the First Amendment and § 8(c) of the Act. (28 U.S.C.A. § 158(c)). The majority in effect concedes that the March 24 speech did not violate the Act. I agree.

Thus our differences arise with respect to the March 25 speech. I find no threat of reprisal or force or promise of benefits in the speech. In the first sentence of the portion of the March 25 speech, quoted in the majority opinion, the President recognized that under the Act he could make no promise of reward in light of the representation election. In light of such recognition, an intent to violate the Act cannot be easily implied.

The President later in the speech stated his view or opinion, "It has been our policy during this period of growth to pay what the business can afford and yet still stay in line with our competition." He then goes on to say, "And when changes are due—changes will be made." In substance, the President is merely expressing his opinion that the company will continue to follow the past policy immediately previously stated of treating the employees fairly. No unqualified promise is made to increase the employees' compensation at any time, any increase being contingent upon what the company could afford. No promise of increase in pay in any specified amount or at any specified time can be fairly implied. There is nothing express or implied in the statement that the company policy with respect to compensation is in any degree contingent upon defeating the Union in the election or that the express policy of the company would be any different if the Union won the election.

This case is readily distinguishable factually from NLRB v. Dixisteel Buildings, Inc., 8 Cir., 445 F.2d 1260, cited in the majority opinion.

I would deny enforcement based on the portion of the Board's order which finds the President's speeches to be violative of the Act.